# MorrisonCohen LLP

Jason Gottlieb
Partner
(212) 735-8837
jgottlieb@morrisoncohen.com

May 4, 2023

**VIA ECF**

Hon. Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square, Courtroom 619
New York, New York 10007

Re:   *SEC v. Genesis Global Capital, LLC and Gemini Trust Company, LLC*, 1:23-cv-00287

Dear Judge Ramos:

This firm represents Defendant Genesis Global Capital, LLC ("GGC") in the above-referenced matter. We write per Section 2.A.ii of the Court's Individual Practices to respectfully request a pre-motion conference regarding GGC's proposed motion to dismiss the Complaint (ECF 1) filed by Plaintiff Securities and Exchange Commission ("SEC").

In the Complaint, the SEC alleges a single violation of Section 5 of the Securities Act of 1933 against GGC (and co-defendant Gemini Trust Company, LLC ("Gemini")). The SEC claims that GGC offered and sold unregistered "securities" through a tri-partite cryptocurrency asset lending program known as "Gemini Earn." Compl. ¶¶ 68, 72-74. The SEC seeks various forms of relief against GGC, namely a permanent injunction against future potential violations of Section 5, disgorgement of any ill-gotten gains, and civil monetary penalties. Compl. at p. 21 (Prayer for Relief).

GGC intends to submit a motion to dismiss the Complaint, because the loans provided by Gemini Earn customers were just that – loans, not "securities." Additionally, the SEC does not sufficiently plead a basis for a permanent injunction or disgorgement, requiring dismissal of those requests as well.[1]

Counsel for GGC and the SEC have conferred, and respectfully propose the following briefing schedule for GGC's motion: GGC will file its motion to dismiss by May 26, 2023, the SEC will file its opposition by July 7, 2023, and GGC will file its reply by August 4, 2023.

## I.    Factual Background

In February 2021, GGC, an institutional cryptocurrency lender and borrower, began participating in the Gemini Earn program, under which customers of Gemini, a licensed trust company, could place

---

[1]   On January 19, 2023, one week after the SEC filed its Complaint, GGC and two affiliated debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court in this district. *See In re: Genesis Global Holdco, LLC, et al.*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.). That proceeding, in which Gemini Earn customers are creditors of GGC, is proceeding in the regular course.

Hon. Edgardo Ramos, p. 2
May 4, 2023

crypto assets with Gemini, which would then aggregate its customers' assets and loan them to GGC. *See* Compl. ¶¶ 23, 25-26, 31.

The relationship between the Gemini customer, Gemini (as agent for the Gemini customer), and GGC were memorialized in a three-party loan agreement (the "Earn Loan Agreement"). Compl. ¶ 26. All loans to GGC in connection with the Earn program were open-term; Gemini customers could terminate all, or a portion, of their placement of assets at any time without any fee. *Id.* ¶ 31. In exchange for the use of the assets, GGC paid contractually determined rates of interest. *Id.* ¶ 27.

GGC pooled on its balance sheet the digital assets that it received from Gemini customers and other lenders (Compl. ¶ 38), and deployed the assets on its balance sheet by either lending them to institutional borrowers or using them as collateral for GGC's own borrowing (*id.* ¶ 39). Nevertheless, GGC was obligated to repay Gemini customers' principal and interest based on the terms of the Earn Loan Agreement, regardless of the performance of its lending activities. *Id.* ¶¶ 27-31.

The Gemini Earn program ceased on November 16, 2022, as the SEC has acknowledged. *See* Compl. ¶ 8 (alleging that "Genesis intends to reengage in crypto asset lending activities," but not the Gemini Earn program in particular).

## II.   Legal Argument

The SEC alleges that Gemini customers' loans were "securities" under two (conflicting) theories. First, the SEC suggests that the loans are "investment contracts" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and second, that they are simultaneously "security notes" under *Reves v. Ernst & Young*, 494 U.S. 56 (1990). The Complaint should be dismissed because its allegations establish that Gemini customers' loans are loans, and not investment contracts or security notes.

<u>Earn Loan Agreements Are Not Investment Contracts.</u>  An instrument is an "investment contract" where there is an investment of money, in a common enterprise, in which the purchaser has a reasonable expectation of profits, with such profits derived solely from the efforts of others. *Howey*, 328 U.S. at 299. Loan agreements with GGC are not "investment contracts" because Gemini customers did not "invest" in a "common enterprise" with an "expectation of profits from the efforts of others."

The SEC does not sufficiently allege a "common enterprise" among lenders. Gemini customers are not "horizontally" aligned with each other; each is contractually entitled to receive repayment of their loan regardless of GGC's profitability, skills, or success. Gemini customers do not share in profits (or losses) with GGC, let alone on a *pro rata* basis; they do not "invest" in GGC's business enterprise, or receive a right to GGC's profits; and have no entitlement to traditional capital appreciation. This relationship does not, as a matter of law, constitute the "horizontal commonality" required in this Circuit under *Howey*. *See Revak v. SEC Realty Corp*., 18 F.3d 81 (2d Cir. 1994) ("the fortunes of each investor [must] depend upon the profitability of the enterprise as a whole").

Gemini customers also do not profit from the "efforts of others." Each loan to GGC is backed by GGC as principal, and is a specific obligation of GGC. Lenders do not earn profit based on the returns that GGC generates in its lending business, and do not share in profits earned by GGC. *Cf. SEC v. Glenn W. Turner Enters., Inc*., 474 F.2d 476, 482 (9th Cir. 1973). The mere fact that two separate loans are made to the same company does not transmogrify the instruments into securities. *See, e.g., Deckebach*

Hon. Edgardo Ramos, p. 3
May 4, 2023

*v. La Vida Charters, Inc. of Fla.*, 867 F.2d 278, 282 (6th Cir. 1989); *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1540 (10th Cir. 1993).

<u>Earn Loan Agreements Are Not Security Notes</u>.  Gemini customers' loan agreements with GGC are also not security notes under *Reves*.  A note is not a security if it is one of the types of "non-security notes" identified in *Reves* (collectively, the "Non-Security Notes") or if it bears a "strong family resemblance" to the Non-Security Notes.  A *Reves* analysis principally examines the parties' motivations and reasonable expectations, the plan of distribution, and risk reducing factors.  *Reves*, 494 U.S. at 64-67.

The Complaint does not plausibly allege that Gemini customers' loan agreements are security notes.  Gemini customers' motivations, as alleged, were nothing more than to receive a short-term return on digital assets.  The loans were not specifically marketed or denominated as securities.  *See* Compl. ¶ 3.  They were open-term and redeemable on demand.  Compl. ¶ 31.  The program was only open to Gemini customers.  Compl. ¶ 26.  There was no secondary market for any loan to GGC; no lender could resell a loan in the way an investor could with a traditional security.  Gemini customers were not, as a matter of fact, speculating on GGC's economic future, or capitalizing GGC's general business operations.  The Complaint alleges nothing more than loans, which are not securities under *Reves*.  *See Banco Espanol de Credito v. Security Pac. Nat'l Bank*, 973 F.2d 51, 55 (2d Cir. 1992); *Asset Prot. Plans, Inc. v. Oppenheimer & Co., Inc.*, No. 8:11-cv-440-T-23MAP, 2011 WL 2533839, at *3 (M.D. Fla. June 27, 2011) (holding notes were not securities where they were "short-term, the borrower had to re-pay the note in full . . . and the note would not appreciate . . . ."); *Kirschner as Tr. of Millennium Lender Claim Tr. v. JPMorgan Chase Bank, N.A.*, No. 17 CIV. 6334 (PGG), 2020 WL 2614765 (S.D.N.Y. May 22, 2020).

<u>Permanent Injunctive Relief And Disgorgement Are Not Sufficiently Alleged.</u>  The SEC's demand for an Order permanently enjoining GGC from violating Section 5 and disgorgement of GGC's ill-gotten gains should also be dismissed.  The SEC does not – because it cannot – allege that the Gemini Earn program is ongoing, or will ever be commenced again.  Its singular allegation that GGC may "reengage in crypto asset lending activities" is not an alleged future violation of the securities laws for which an injunction is appropriate.  *See, e.g.*, *Sec. & Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated.").  The SEC also fails to allege any facts purporting to show the basis for disgorgement, failing to meet even a notice pleading standard.  *See* Fed. R. Civ. P. 8(a); *S.E.C. v. Norton*, No. 95 CIV. 4451 (SHS), 1998 WL 691043, at *5 (S.D.N.Y. Sept. 30, 1998).

We look forward to setting forth these arguments in greater detail in our motion.  Thank you for your attention to this matter.

Respectfully submitted,

*/s/ Jason Gottlieb*

Jason Gottlieb