

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

VIA ECF                                                                                          May 9, 2023
The Honorable Edgardo Ramos
United States District Court for the Southern District of New York
40 Foley Square, Courtroom 619
New York, New York 10007

Re:   *SEC v. Genesis Global Capital, LLC et al., LLC*, No. 1:23-cv-287
      <u>Response to Defendants' May 4, 2023 Pre-Motion To Dismiss Letters</u>

Dear Judge Ramos:

  Pursuant to Section 2.A.ii of Your Honor's Individual Practices, Plaintiff Securities and Exchange Commission ("SEC") hereby submits its response to the pre-motion letters filed by Defendants Genesis Global Capital, LLC ("GGC") and Gemini Trust Company ("Gemini") (collectively, "Defendants") regarding their contemplated motions to dismiss ("GGC Letter" and "Gemini Letter").

  Defendants violated the federal securities laws by offering and selling securities in unregistered transactions to retail investors through the "Gemini Earn" crypto asset lending program. Compl. ¶ 1. Beginning in February 2021, Defendants raised billions of dollars' worth of crypto assets from hundreds of thousands of investors through Gemini Earn, then refused to allow investors to withdraw nearly $1 billion of their assets in November 2022, purportedly due to liquidity issues. *Id*. at 7. The SEC's Complaint states valid claims under Section 5(a) and 5(c) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a) and 77e(c)].

**The Complaint Properly Alleges an Offer and Sale of Securities under *Howey***

  Defendants claim (GGC Letter at 2) that the Gemini Earn agreements are not investment contracts.[1] But this argument ignores that Congress defined "security" broadly to "encompass virtually any instrument that might be sold as an investment," because "Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called." *SEC v. Edwards*, 540 U.S. 389, 393 (2004); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946) (whether an instrument is an investment contract is a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes

---

[1] Congress defined securities as, among other things, investment contracts and notes. 15 U.S.C. §§ 77b(a)(1), 77c(a)(10).

devised by those who seek the use of the money of others on the promise of profits."). As sufficiently alleged in the Complaint, the offer and sale of Gemini Earn agreements through the Gemini Earn program constitutes the offer and sale of investment contracts under a straightforward application of *Howey*: they involve the investment of money in a common enterprise, with an expectation of profits, to be derived from the efforts of a promoter or third party. Compl., ¶¶ 19, 56-67; *Howey*, 328 U.S. at 299.

Defendants argue that the Complaint's allegations do not satisfy the "horizontal commonality" requirement for a common enterprise and assert that investors do not profit from the "efforts of others." GGC Letter at 2. But horizontal commonality is plainly satisfied here. GGC pooled investors' crypto assets and used them to generate returns for both GGC and investors. Compl., ¶ 59. Investor returns were reliant on that pooling, and an investor who contributed a larger sum of crypto assets to the program would be entitled to a commensurately greater interest payment. *See id.* at ¶ 26-27, 59. Contrary to Defendants' suggestions, a *pro rata* share of profits is "not required for a finding of horizontal commonality." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 354 (S.D.N.Y. 2019); *see SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 178 (S.D.N.Y. 2020). Rather, the fortunes of each investor "depend[s] upon the profitability of the enterprise as whole." *See Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994).

Moreover, Defendants ignore the SEC's allegations as to the strict vertical commonality between the investors and GGC, which exists when "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Dooner v. NMI Ltd.*, 725 F.Supp. 153, 158 (S.D.N.Y.1989). Investors' fortunes were tied to GGC's fortunes; both GGC's and investors earned profits when GGC deployed the pooled assets. Compl., ¶ 60. Moreover, GGC's current situation, where investor assets are frozen and GGC is in bankruptcy, demonstrates that the fortunes of GGC's and each investor are tied to one another in a common enterprise. *Id.* at ¶ 60; GGC Letter at 1.

The Complaint also sufficiently alleges investors' reasonable expectation of profit from the efforts of others, namely GGC. Investors reasonably expected to profit from GGC's pooling and successful deployment of investors' assets, including GGC's evaluation of lending counterparties, negotiation of favorable terms, and management of market and counterparty risk. *See* Compl., ¶¶ 41, 61-67.

**The Complaint Sufficiently Alleges an Offer and Sale of Securities Under *Reves***

Defendants baldly claim (GGC Letter at 2-3) that the Gemini Loan agreements were simply loans and therefore not securities, but the Complaint properly alleges that Gemini Earn agreements were notes and offered and sold through Gemini Earn as securities under *Reves v. Ernst & Young*, 494 U.S. 56 (1990). Compl. ¶¶ 44-55. Under *Reves*, a note is presumed to be a security unless it bears a strong resemblance to instruments that are not securities, which courts determine by examining four factors: (1) the motivation of the parties; (2) the plan of distribution; (3) the expectations of the investing public; and (4) the availability of an alternative regulatory regime that "significantly reduces the risk of the instrument" for investors other than the securities

laws, "thereby rendering application of the Securities Acts unnecessary." *Reves*, 494 U.S. 56, 64-69 (1990). The Complaint alleges that *all four* factors confirm that the Gemini Earn agreements were securities notes. Compl., ¶¶ 44-55.

**Motivation of the Parties:** GGC offered the Gemini Earn program to obtain crypto assets for the use of its business – namely, to run its institutional lending activities, generate profits for itself, and to pay the interest promised to investors, and investors were primarily interested in the profit they expected the program to generate. *See* Compl., ¶¶ 44-48.

**Plan of Distribution:** Defendants publicly advertised the Gemini Earn program on websites and on social media, and approximately 340,000 retail investors invested in the program. *See* Compl., ¶ 49.

**Public Expectations:** Defendants repeatedly promoted Gemini Earn as an investment. Compl., ¶ 50. The economic realities of the transaction, in which investors had an opportunity to tender crypto assets with GGC in exchange for earning interest with some of the "highest rates" available for crypto assets, underscore why the investing public considered the program to be an investment opportunity. *Id.*

**Alternative Regulatory Regime:** No alternative regulatory scheme or risk-reducing factors existed to protect investors with respect to Gemini Earn, nor do Defendants argue otherwise. *See* Compl*.*, ¶¶ 51-55.

Defendants (GGC Letter at 3) cite to a number of factually inapposite cases, but notes similar to those offered and sold by Defendants have previously been deemed securities. *See McNabb v. SEC*, 298 F. 3d 1126, 1130-31 (9th Cir. 2002) (finding that promissory notes sold to unsophisticated individuals for the purpose of raising funds for a business, with no alternative regulatory regime, constituted securities notes); *SEC v. Thompson*, 732 F.3d 1151, 1162-70 (10th Cir. 2013).

**Defendant's Request as to Relief Is Procedurally Improper and Lacks Merit**

Defendants further seek to dismiss SEC's demand for permanent injunctive relief and disgorgement, but Rule 12(b)(6) does not properly allow for dismissal of requests for relief. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010) ("a motion to dismiss is addressed to a 'claim' – not a form of [relief]."). In any event, given that GGC intends to reengage in crypto asset lending activities, *Compl.,* ¶8, and past illegal conduct is highly suggestive of the likelihood of future violations, a motion to dismiss the request for injunctive relief lacks any merit. *See SEC v. Aragon Cap. Mgmt.*, LLC, No. 07 Civ. 919, 2008 WL 216320, at *5 (S.D.N.Y. Jan. 16, 2008). Further, as the SEC has adequately pled that Defendants received proceeds from unregistered offers and sales of securities, Compl*.,* ¶¶ 1, 6-7, dismissing a claim for disgorgement at this stage would be premature. *See, e.g.*, *SEC v. Wyly*, 56 F. Supp. 3d 394, 431 (S.D.N.Y. 2014) ("Because section 5 is a strict liability offense, the typical measure of disgorgement is all profits made on the sale of unregistered securities . . . .").

Respectfully submitted,

*/s/ Edward J. Reilly*
Edward J. Reilly
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-6791

cc: All Counsel of Record (*via ECF*)