UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff,* | |
| v. | No. 23-CV-287 (ER) |
| GENESIS GLOBAL CAPITAL, LLC and GEMINI TRUST COMPANY, LLC, | |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>GEMINI TRUST COMPANY, LLC'S MOTION TO DISMISS</u>**

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTS ............................................................................................................................... 2

ARGUMENT ...................................................................................................................... 5

I.   The Complaint Must Be Dismissed Because the MDALA is Not a Security ........................ 5

II.  The Complaint Must Be Dismissed Because the SEC Has Not Alleged a "Sale" of or
     "Offer to Sell" a Security ............................................................................................... 5

        A.   Section 5 Requires the "Sale" of or an "Offer to Sell" the Purported Security ... 6

        B.   The Complaint Does Not Allege Either Defendant Sold or Offered to Sell the
             MDALA to Anyone ............................................................................................. 7

CONCLUSION .................................................................................................................. 11

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5

*Excevarria v. Dr Pepper Snapple Grp., Inc.*,
    764 F. App'x 108 (2d Cir. 2019) .........................................................................5

*Gebhardt v. Allspect, Inc.*,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000)....................................................................5

*Nat'l Res. Def. Council, Inc. v. Muszynski*,
    268 F.3d 91 (2d Cir. 2001)....................................................................................7

*Reves v. Ernst & Young*,
    494 U.S. 56 (1990).................................................................................................5

*SEC v. Cavanagh*,
    445 F.3d 105 (2d Cir. 2006)..................................................................................6

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946)...............................................................................................5

*Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*,
    2007 WL 2230082 (S.D.N.Y. 2007).....................................................................3

*Trahan v. Lazar*,
    457 F. Supp. 3d 323 (S.D.N.Y. 2020)..................................................................8

*Williams v. Taylor*,
    529 U.S. 420 (2000)...........................................................................................6-7

**Statutes and Rules**

15 U.S.C. § 77b(a) ....................................................................................................6, 10

15 U.S.C. § 77d(a)(1)....................................................................................................10

15 U.S.C. § 77e(a)..........................................................................................................6

15 U.S.C. § 77e(c)...................................................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ........................................................1, 2, 5, 8

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)........................................................................7

*The American Heritage Dictionary of the English Language* (5th ed. 2015)................7

Defendant Gemini Trust Company, LLC ("Gemini") respectfully submits this memorandum in support of its Rule 12(b)(6) motion to dismiss the Complaint filed by Plaintiff Securities and Exchange Commission (the "SEC").

### PRELIMINARY STATEMENT

Gemini Earn ("Earn") was an asset lending program that allowed participants to lend digital assets like bitcoin to a third-party borrower, Genesis Global Capital, LLC ("Genesis"). The relationship among Genesis (the borrower), the individual Earn users (the lenders), and Gemini (custodian and agent for the lenders) was memorialized in a tri-party contract, the Master Digital Asset Loan Agreement (the "MDALA"). This agreement set up the framework for the Earn program—it was a mechanism through which the borrower and lender could choose to engage in subsequent transactions, but it did not itself require any lending or borrowing by any party, and there was no way for a lender to transfer or assign it without the affirmative consent of all parties.

Notwithstanding the unambiguous nature of the MDALA, and the limitations on how it could be used, the SEC seeks to turn the Earn program into something it was not: the sale of unregistered securities. While the SEC suggests that application of the federal securities laws is obvious here, the Complaint is a novel attempt to expand their scope beyond any reasonable reading of the relevant statutory language. Specifically, the SEC claims that the MDALA—which was entered into as a prerequisite to participation in the Earn program—is itself the unregistered security. This has no basis in law or fact. Further, the Complaint never explains how, when, or where the MDALA was supposedly sold, or on what terms.

The reality is that the MDALA was never sold or offered for sale, could not be traded on any secondary market, did not involve the transfer of title to any asset, and did not require any lending or borrowing by anyone. It is a commercial agreement not covered by Section 5 of the

Securities Act, which requires the *sale of* or *offer to sell* a security.  Permitting this case to proceed would require the Court to ignore the Act's plain meaning.

*     *     *

The Court should dismiss the Complaint for two independent reasons:

*First*, the MDALA is not an investment contract or security note that qualifies as a "security" under federal law.  Accordingly, there was no requirement that any party register it with the SEC, and so there was no violation of Section 5.  This point is discussed in detail in Genesis's motion to dismiss the Complaint, and Gemini incorporates Genesis's arguments in that regard.

*Second*, even assuming the SEC had adequately pleaded that the MDALA is a security, it failed to make non-conclusory allegations that the MDALA was sold to anyone, or that any party offered to sell it.  This is a second—independent—reason the Complaint should be dismissed.

FACTS

## A.    Background

Gemini is a New York limited purpose trust company chartered under the New York Banking Law and supervised by the New York Department of Financial Services.  Compl. ¶ 17. Pursuant to its charter, Gemini operates a full-reserve digital asset exchange and digital asset custody business.  From February 2021 through November 2022, Gemini acted as lender's agent and asset custodian for the Earn program, under which Gemini's users could choose to lend certain digital assets to Genesis for defined interest payments.  *Cf. id.* ¶ 1.[1]

---

[1] The Complaint is rife with factual misstatements and inaccuracies, including by regularly referring to "Defendants" when describing facts applicable only to one Defendant (or neither). In paragraph 1, for example, the SEC alleges that "Defendants raised billions of dollars' worth of crypto assets" through Earn.  In fact, Gemini did not "raise" any crypto assets through the program.  In any event, because this motion is made under Rule 12(b)(6), Gemini is constrained to accept the specifically pleaded factual allegations as true, which it does solely for purposes of the motion.

2

Each Gemini user who elected to participate in the Earn program agreed to the MDALA. *Id.* ¶¶ 3, 26. The MDALA defined each party's role. Genesis was the "Borrower," the Earn participant was the "Lender," and Gemini was the "Custodian" and agent for each "Lender." *See* Declaration of John F. Baughman, dated May 26, 2023, Ex. 1[2] at 1–2.[3] Gemini, in its role as agent, facilitated the movement of digital assets between borrower and lender, for which it received a defined and publicly posted agent fee. *Id.* at 1, 3; Compl. ¶¶ 3, 26. All loans made through the Earn program were open-term, and Earn lenders could terminate their digital asset loans at any time without any fee, at which point Genesis was required to return the loaned assets. *Id.* ¶ 31.

In November 2022, Genesis announced that, due to market-wide volatility, it was stopping lender redemptions from the Earn program. *Id.* ¶ 7. It later commenced a bankruptcy proceeding in which Gemini is actively participating, as the agent of the Earn lenders, to maximize their recovery.[4]

---

[2]   Page numbers were added to the exhibit for ease of reference.

[3]   The SEC relied on and incorporated the MDALA by reference into the Complaint, and so the Court is entitled to rely on the text of the MDALA in ruling on this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (stating that, in ruling on a complaint, the court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); *Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*, 2007 WL 2230082, at *3 (S.D.N.Y. 2007) ("The Court may consider outside documents that are integral to the complaint, regardless of whether those documents are attached to the complaint, so long as the pleader has given notice of them or refers to them.").

[4]   On May 22, 2023, Gemini, as agent for all Earn lenders, filed claims in the pending Genesis bankruptcy for the return of all lender assets. Claim Nos. 356, 369, 400, Case No. 23-10063 (S.D.N.Y. Bankr.), *see* restructuring.ra.kroll.com/genesis/home-claiminfo.

B.      Specific Allegations at Issue in this Motion

The thesis of the SEC's case is that Defendants engaged in the unlawful "sale" of unregistered "securities."  *Id*. ¶ 1.  It is important for consideration of Defendants' motions to critically examine the Complaint's allegations about each of these specific terms.  The key allegation is in paragraph 5.  The SEC contends:

> The [MDALAs], as offered and sold through the Gemini Earn program, were securities that Genesis and Gemini offered and sold to the investing public.

Compl. ¶ 5.

As noted, the question whether the MDALA is a security is considered in Genesis's motion and will not be discussed in detail here.  Instead, this motion focuses on the SEC's allegation that the MDALA was "offered and sold." [5]

The SEC pleads no facts to support its conclusory allegation of a purported sale. [6]  The Complaint does not, for example, describe the terms on which an interested party could buy an MDALA.  It does not even allege who the sellers and buyers of the MDALA might have been or how title transferred from one to the other on the consummation of any supposed sales.  Nor does it describe the value exchanged in connection with any supposed sale.  To the contrary, the allegations about the purported sale are entirely conclusory.

---

[5]   The Complaint has a section entitled, "The Gemini Earn Program Constituted an Offer and Sale of Securities Under *Reves*."  Compl. ¶¶ 44–55.  In that section, however, there is not a single allegation describing how, when, or on what terms the supposed sale occurred.  Paragraph 49 does plead that MDALAs "were offered and sold to any U.S. investor," but this is entirely conclusory as to the manner, place, and terms of any purported sale.  *Id*. ¶ 49.  The Complaint's additional section asserting that "The Gemini Earn Program Constituted the Offer and Sale of Investment Contracts under *Howey*" is similarly deficient.  *Id*. ¶¶ 56–67.  It makes no allegation at all as to the nature of the sale that supposedly occurred.

[6]   Note that the SEC is alleging that there *actually* was a sale.  It claims in paragraph 5 of the Complaint that there was an offer *and* a sale.

ARGUMENT

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must go beyond "the speculative level," *see Twombly*, 550 U.S. at 555, and must do more than plead "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).[7]  "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'"  *Excevarria v. Dr Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 558).  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## I.       The Complaint Must Be Dismissed Because the MDALA is Not a Security

Gemini adopts and incorporates Genesis's arguments in support of its motion to dismiss. The MDALA is neither an "investment contract" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), nor a "security note" under *Reves v. Ernst & Young*, 494 U.S. 56 (1990).

## II.      The Complaint Must Be Dismissed Because the SEC Has Not Alleged a "Sale" of or "Offer to Sell" a Security

Even if the Complaint adequately alleged that the MDALA is a security, the SEC's sole cause of action—for a violation of Securities Act Sections 5(a) and 5(c)—must be dismissed because it has not alleged that Gemini or anyone else sold or offered to sell the MDALA. Remarkably, the Complaint acknowledges this legal requirement in its factual allegations.  In

---

[7]    Unless otherwise stated, all legal citations are "cleaned up," and internal citations and quotation marks are omitted.  Similarly, all emphasis is added.

5

paragraph 19, the Complaint quotes the Supreme Court's decision in *SEC v. Edwards*, 540 U.S. 389, 393 (2004), for the proposition that the securities laws encompass "any instrument that might be sold as an investment."  This is fatal to the Complaint.  The only "instrument" alleged here is the MDALA, but ***it was never sold***.

A.      **Section 5 Requires the "Sale" of or an "Offer to Sell" the Purported Security**

The Securities Act's prohibition on the sale of unregistered securities requires just that: a *sale* or an *offer to sell*.  The text is straightforward: Section 5(a) states that, "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly . . . *to sell such security* . . . ."  15 U.S.C. § 77e(a).  Section 5(c) states that "[i]t shall be unlawful for any person, directly or indirectly, . . . *to offer to sell* . . . any security . . . ."  15 U.S.C. § 77e(c); *see SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006) ("Section 5 requires that securities be registered with the SEC before any person may sell or offer to sell such securities.").[8]  The sale requirement is unambiguous, there are no relevant statutory exceptions, and there is no reasonable debate as to what constitutes a "sale."  Indeed, the Securities Act itself provides the controlling definitions.  "The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, *for value*."  15 U.S.C. § 77b(a)(3).  "The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, *for value*."  *Id.*

The words Congress used in the Securities Act mean what they say.  *See, e.g.*, *Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We give the words of a statute their 'ordinary, contemporary,

---

8    The Claim for Relief in the Complaint accepts this burden, and it alleges Defendants "made use of the means and instruments of transportation or communications in interstate commerce or of the mails *to sell securities*," and "*to offer to sell* through the use or medium of a prospectus or otherwise, securities . . . ."  Compl. ¶ 73.

common meaning,' absent an indication Congress intended them to bear some different import.");

*Nat'l Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) ("Statutory analysis

begins with the plain meaning of a statute.  The plain meaning can be extrapolated by giving words

their ordinary sense.").  Whatever else Section 5 covers, it explicitly requires a sale, which requires

a buyer to pay (or offer) a seller something of *value* for the thing sold.[9]  This requirement puts paid

to the SEC's entire theory:  at no time was the MDALA ever "disposed of" ***for value.***  There was

never a time at which someone could obtain a price for an MDALA and decide to buy one by

giving the seller some "value."  It just never happened.

### B.     The Complaint Does Not Allege Either Defendant Sold or Offered to Sell the MDALA to Anyone

The SEC assumes, but does not actually plead, that a sale of or offer to sell the MDALA

took place.  That is a fatal flaw.  Conclusory assertions that a security was sold are insufficient

under *Twombly* and *Iqbal*.[10]  There are two fundamental problems with the Complaint.

***First: the SEC's pleading is impermissibly conclusory.***  While the Complaint recites the

words "sell," "sale," and "sold," the SEC does not allege, much less with the requisite specificity,

that the MDALA was sold by a Defendant to anyone else—or, for example, how it was purportedly

sold, or to whom, or what the buyer purportedly exchanged for it.[11]  Nor does it allege that any

---

[9]     The Securities Act definition tracks both the lay dictionary definition of "sale" and the generic legal definition of the word.  *Compare The American Heritage Dictionary of the English Language* (5th ed. 2015) (defining "sale" as "1.a. The exchange of goods or services for an amount of money or its equivalent; the act of selling.") *with Black's Law Dictionary* (11th ed. 2019) (defining "sale" as "1. The transfer of property or title for a price.  2. The agreement by which such a transfer takes place.").

[10]    The Complaint also fails to put Gemini on notice of *what* sale or offer to sell is being alleged, how and when that sale purportedly occurred, and what Gemini's role in such a sale purportedly was.

[11]    The Complaint is vague and purely conclusory on this essential element.  *See, e.g.*, Compl. ¶ 69 ("Defendants have used interstate commerce to offer and sell securities through Gemini Earn by, among other things, engaging in general solicitation through their websites . . . ."); *id.*

money or other asset changed hands at the time a lender entered into the MDALA—or that title to the MDALA passed to the lender or any other party.

**Second: the SEC ignores the actual terms of the MDALA.**   The reason the SEC did not adequately allege a sale is that it could not do so.  The MDALA itself confirms that it was not and could not be bought or sold by anyone.  Once again, standard principles applicable to a Rule 12(b)(6) motion require dismissal.  "'[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 341 (S.D.N.Y. 2020) (quoting *Rozsa v. May Davis Grp., Inc*., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002), *aff'd sub nom. Rozsa v. SG Cowen Sec. Corp*., 165 F. App'x 892 (2d Cir. Jan. 24, 2006)). The following features of the MDALA are dispositive on this point:

(1)   **Framework**:  The framework of the MDALA demonstrates that there never was any "sale."  The contract merely establishes a mechanism by which parties could later choose (or not) to engage in subsequent transactions.  It did not require that any money, digital asset, or anything else of value change hands, either at the time it was signed or at any other time.  And the MDALA itself did not change hands at any time.

(2)   **No lending required**:  The MDALA defines the terms under which the lender may agree to lend certain digital assets, but only *if* the lender decides to make them available.  An individual who signs the MDALA is not required to lend anything to the borrower—or to do anything at all.  A signed MDALA makes subsequent transactions possible but does not by itself

---

¶ 20 (alleging that Sections 5(a) and 5(c) "prohibit Gemini from engaging in the offer and sale of such unregistered securities"); *id.* ¶ 56 ("The offer and sale of Gemini Earn Agreements through the Gemini Earn program also constitutes the offer and sale of investment contracts under *Howey*.").

consummate any loan.  The amount of digital assets to lend, the length of the loan, and indeed whether to lend any digital asset at all, are completely at the lender's option.  *See* Ex. 1 at 2 (defining the "Gemini Earn Platform" as "a service . . . offered by Custodian whereby a Lender *may authorize* Custodian . . . to negotiate one or more loan agreements on the Lender's behalf . . . at Lender's direction"); *id.* at 3 ("During the Term of this Agreement, on any Business Day Lender *may direct* Custodian, via the Gemini Earn Platform to notify Borrower on its behalf for each Digital Asset and Loan type listed in the applicable Offered Loan Terms *whether it will lend* additional Digital Assets at the current Loan Fee . . . .").

(3) ***No borrowing required***:  Similarly, the MDALA does not require Genesis to borrow any particular digital asset.  *Id.* at 1 ("[S]ubject to the terms and conditions of this Agreement, Borrower *may*, from time to time, seek to initiate a transaction pursuant to which Custodian will facilitate the lending of Digital Assets on behalf of Lender to Borrower . . . .").

(4) ***Lack of sale-like terms***:  The MDALA contains no pricing information, no mechanism for its sale or purchase, and no suggestion that it is negotiable.  *See generally* Ex. 1.

(5) ***No trading market***:  There is no allegation of any market in which one could trade MDALAs, because there was none.

(6) ***Non-assignability***:  Each MDALA is personal to each individual lender, who cannot assign the contract without the agreement of both Gemini and Genesis.  It states: "no Party may assign this Agreement or any rights and duties hereunder without the prior written consent of each of Custodian and Borrower."  *Id.* at 14.  This unambiguous language reflects the parties' expectation that the MDALA could not be sold.  The Complaint tacitly acknowledges this and does not allege that anyone ever attempted to transfer an MDALA to anyone else.

(7)     ***Gemini's limited agency role***:  Gemini's unique role in the digital asset lending program removes Gemini even further from any purported "sale" of or "offer to sell" the MDALA. Under the agreement, Gemini served as an agent "to facilitate Loans."  *Id.* at 1.  In return for a defined agent fee, Gemini notified the borrower of the amount and type of digital asset a lender was willing to lend, and then handled on the lender's behalf the transfer of digital assets and loan fees to and from the borrower; Gemini also maintained records of each individual loan.  *Id.* at 3. Gemini did not borrow or lend any digital assets under the MDALA or take title to any digital asset borrowed or loaned under the MDALA—much less buy, sell, or offer to buy or sell the MDALA itself.[12]

The features of the MDALA described above demonstrate that not only was there never any "sale" within the meaning of Section 5 of the Securities Act, there could not have been. Accordingly, the Complaint should be dismissed.

---

[12]  To the extent the SEC argues that a transaction subsequent to the creation of a given MDALA is what it really meant to allege as a "security," it failed to do so in the Complaint, which names the MDALA as the purported security.  Additionally, as to any subsequent transactions, Section 4(a)(1) of the Securities Act states that "[t]he provisions of section 5 shall not apply to . . . transactions by any person other than an issuer, underwriter, or dealer."  15 U.S.C. § 77d(a)(1).  The SEC has not alleged that Gemini is an issuer, underwriter, or dealer with respect to the MDALA or any other aspect of the Earn program.  *Cf.* Compl. ¶¶ 2, 16, 20 (naming Genesis as the "issuer" of purported securities).  Each of those terms is also defined in Section 2 of the Securities Act, and none of them match up with Gemini's unique role in the MDALA as the lender's agent.  *See* 15 U.S.C. § 77b(a)(4), (11), and (12).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: New York, New York
      May 26, 2023

JFB LEGAL, PLLC

By /s/ John F. Baughman

    John F. Baughman
    Andrew Bosse
    Elizabeth Lee
    299 Broadway – Suite 1816
    New York, New York 10007
    (212) 548-3212

    *- and -*

SHEARMAN & STERLING LLP

By /s/ John A. Nathanson

    John A. Nathanson
    599 Lexington Avenue
    New York, New York 10022
    (212) 848-8611

*Attorneys for Gemini Trust
Company, LLC*