```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

              Plaintiff,

         v.                              23 Civ. 287 (ER)

GEMINI TRUST COMPANY, LLC and
GENESIS GLOBAL CAPITAL LLC,

              Defendants.
                                         Telephone Conference
------------------------------x
                                         New York, N.Y.
                                         May 16, 2023
                                         11:00 a.m.

Before:

                HON. EDGARDO RAMOS,

                                         District Judge


                    APPEARANCES

EDWARD J. REILLY
LAURA E. MEEHAN
     Attorneys for Plaintiff

JFB LEGAL, PLLC
     Attorneys for Defendant Gemini
BY:  JOHN F. BAUGHMAN
     ANDREW C. BOSSE
     ELIZABETH LEE

MORRISON COHEN, LLP
     Attorneys for Defendant Genesis
BY:  JASON P. GOTTLIEB
     DANIEL C. ISAACS
     WILLIAM ROTH
```

1        (Case called; appearances noted)

2        THE COURT:  Good morning, everyone.  This is Judge
3    Ramos.

4        This matter is on for a premotion conference.  I note
5    for the record that it is being conducted by telephone.  This
6    is also the first time that the parties have appeared before
7    me.  We are here at the request of the defendants.

8        Mr. Reilly, let me begin with you.  Why don't you tell
9    me what this case is about.

10       MR. REILLY:  Thank you, your Honor.

11       This case is about a crypto asset lending program
12   called Gemini Earn in which defendants raised billions of
13   dollars from hundreds of thousands of investors and then
14   suddenly, in November 2022, the defendants paused the program,
15   froze all the investors' assets, and since then over 300,000
16   retail investors have been unable to withdraw nearly a billion
17   dollars in assets.  Our complaint more than adequately alleges
18   that through this unregistered offer and sale of billions of
19   dollars worth of securities, defendants Gemini and Genesis have
20   violated Sections 5(a) and 5(c) of the Securities Act of 1933.

21       THE COURT:  Let me ask you, what is a crypto assets
22   lending program?

23       MR. REILLY:  So, under this program, your Honor, as we
24   allege, Genesis was in the business of accepting crypto assets
25   from retail investors, pooling and aggregating those assets and

1    then lending them out to other counterparties, I believe,
2    typically, as we allege, institutional counterparties.  In
3    exchange for interest rates that would change over time, Gemini
4    took the crypto assets from the retail investors, pooled them
5    and then would receive an interest rate from the counterparty,
6    and essentially part of the spread would go back to the retail
7    investors, and Genesis would receive part of it as well.
8            Gemini's role, as we allege, is that retail investors
9    would create an account with Gemini if they already did not
10   have an account with Gemini for the crypto assets, and then
11   Gemini effectively would be an agent and facilitate the
12   exchange of the crypto assets from the possession of the retail
13   investors into the hands of Genesis in exchange for an agent
14   fee.  The program lasted for about a year and a half before
15   Genesis froze the program, and again, as I mentioned, none of
16   the retail investors have seen their assets since then.
17           THE COURT:  By crypto assets, I take it, Mr. Reilly,
18   these are Bitcoin and Dogecoin, that type of thing?
19           MR. REILLY:  Correct, your Honor.
20           I believe there were over a dozen different kinds of
21   assets, crypto assets that Genesis and Gemini published that
22   were available to be invested into the Gemini Earn program, and
23   they set -- they identified what assets they were willing to
24   accept, and they set the interest rate.
25           THE COURT:  The retail investors only invested their

1   own crypto assets, correct?

2           MR. REILLY:  Correct, your Honor.

3           THE COURT:  And what happened, do you know, that

4   resulted in Genesis ultimately determining not to allow them to

5   obtain their assets?

6           MR. REILLY:  Your Honor, as we allege in the

7   complaint, Genesis experienced a liquidity crisis.  I don't

8   want to speculate on what caused that, but they essentially

9   were not able to -- or they believed that they would not be

10  able to redeem the assets and so voluntarily froze the program.

11  After we filed our complaint before you, your Honor, Genesis

12  entered bankruptcy.

13          THE COURT:  OK.  Thank you.

14          Mr. Baughman, are you going to be speaking on behalf

15  of Gemini?

16          MR. BAUGHMAN:  Yes, your Honor.

17          THE COURT:  What do you want to do?

18          MR. BAUGHMAN:  Could I just give a couple of

19  additional facts that may be relevant to your Honor's sort of

20  framing of the case?

21          THE COURT:  Absolutely.

22          MR. BAUGHMAN:  And then Genesis will have its

23  opportunity as well, of course.

24          You know, Mr. Reilly, who I respect very much, has

25  done a good job of sort of laying out the framework, but I want

1   to clarify one thing, which is the allegation in this case
2   relates to the sale of allegedly unregistered securities.  I
3   want to be absolutely clear the SEC is not contending in this
4   case that the Bitcoin or the Ethereum or the Dogecoin is the
5   security at issue.
6           What the SEC is alleging is that the document called
7   the master loan agreement is a security.  And what the master
8   loan agreement is is an agreement between individual earn
9   users, individuals, as lender; Genesis as borrower; and Gemini
10  as agent.  And so the allegation -- is that document, is that
11  loan agreement the security?
12          So I just wanted to clarify that.
13          We do think that the case presents very unique issues
14  for your Honor's consideration, and I think that is why the
15  parties are proposing, at least considering making motions to
16  dismiss.  Because my friends at Genesis took the lead on the
17  basis for the motion, I will defer to them to describe it,
18  although I do want to flag for the Court's attention that in
19  preparing for, I think it is likely that Gemini will have one
20  unique argument that is unique to them that just wouldn't apply
21  to Genesis.
22          I wanted to get that on the record, but I will pass to
23  my friends at Genesis.
24          Thanks.
25          MR. REILLY:  Your Honor, may I clarify one thing?

N5gWgemC

1             THE COURT:  Sure.

2             MR. REILLY:  Thank you, your Honor.

3             And I don't intend to split hairs unnecessarily with

4   what Mr. Baughman just said, but I just want to be very clear

5   about what we've alleged are the unregistered securities here

6   and what actually was the unregistered offer and sale of

7   securities.

8             So just to be clear, what we've alleged in the

9   complaint is that the Gemini Earn agreements were notes and

10  they were offered and sold through the Gemini Earn program as

11  security notes under the test articulated in *Reves v. Ernst &*

12  *Young*.  And then, separately, we are alleging that the offer

13  and sale of the Gemini Earn agreement through the Gemini Earn

14  program constituted the offer and sale of investment contracts

15  under a straightforward allegation in *Howey*.

16            Thank you.

17            THE COURT:  OK.

18            Mr. Gottlieb.

19            MR. GOTTLIEB:  Thank you, your Honor.

20            And I do appreciate the clarifications that my

21  colleagues Mr. Baughman and Mr. Reilly just made.

22            This case actually has very little to do with crypto,

23  and it has more to do with what is a security, what is a note?

24  The SEC has filed a single cause of action for violation of

25  Section 5 of the 1933 Act for allegedly issuing unregistered

1    securities, but what the SEC has alleged in its complaint is a
2    program of lending and borrowing.  It's a program of loans;
3    hence, not all financial transactions are securities offerings.
4    Sometimes, your Honor, a loan is just a loan.
5         We would intend to show in our motion to dismiss that
6    the allegations in the complaint do not add up to a securities
7    offering either under the standards of the *Howey* test, because
8    that's the test for investment contracts, or the *Reves* test,
9    from *Reves v. Ernst & Young*, a 1990 Supreme Court case that
10   talks about when a note is a security note versus when
11   something is just a loan.  Our motion would go through the
12   allegations in the complaint to show that while the SEC has
13   successfully alleged that Genesis and Gemini were engaged in a
14   program of borrowing and lending, they were not engaged in any
15   kind of securities transactions.
16         THE COURT:  OK.
17         Mr. Reilly, I'll give you a chance to respond briefly
18   if you wish.
19         MR. REILLY:  Thank you, your Honor.
20         It's our position that briefing on defendants'
21   proposed motion to dismiss is unnecessary because the
22   defendants' arguments that they laid out in their letters
23   plainly cannot establish that our complaint has failed to plead
24   a violation of Section 5.  The defendants have presented you
25   with their best arguments, and additional briefing would be

1  more of the same.  And as we've made clear in our letter, under
2  the legal standard for a ruling on a motion to dismiss, the
3  defendants' arguments fail to make a credible argument because
4  we've already more than adequately pled that there's been an
5  unregistered offer and sale of securities, in violation of
6  Section 5.
7           I would be happy to elaborate on why their arguments
8  with respect to the *Reves* test, the *Howey* test and their motion
9  with respect to relief are lacking merit.
10          THE COURT:  No need.  No need, Mr. Reilly.
11          Mr. Baughman, I understand you said you had a
12 separate, discrete issue that you wished to raise.
13          MR. BAUGHMAN:  I just want to clarify, and if I didn't
14 make this clear in the letter, I apologize to the Court.
15          Gemini has a separate argument that it does not
16 qualify as a statutory seller under the securities laws, which
17 we would like to present in addition to the other arguments
18 that are going to be made.
19          THE COURT:  OK.
20          Now, I understand that the parties have conferred and
21 agreed upon a briefing schedule, is that right?
22          Mr. Reilly.
23          MR. REILLY:  Yes, your Honor.
24          THE COURT:  And Mr. Gottlieb.
25          MR. GOTTLIEB:  Yes, that's correct, your Honor.  That

1  agreed schedule was laid out in our premotion letter.

2         Under that schedule, of course, assuming that it's
3  acceptable to the Court, the motion to dismiss will be filed by
4  May 26.  The SEC's opposition will be due by July 7, and reply
5  briefs from the defendants will be due by August 4.

6         THE COURT:  OK.  And do the defendants anticipate
7  filing one document or two?

8         MR. BAUGHMAN:  Your Honor, I think -- obviously we
9  haven't completed it yet, but in all likelihood, there will be
10 one motion for, on the "is it a securities" question, and then
11 we will file a separate, short brief on the "are we a statutory
12 seller" question.

13        THE COURT:  OK.

14        MR. BAUGHMAN:  We will not double dip on the
15 securities argument.

16        THE COURT:  That's what I was hoping to avoid.  Very
17 well then.

18        Let me ask this -- and I will enter the schedule that
19 the parties agreed to -- have there been any settlement talks
20 as yet?

21        Mr. Reilly.

22        MR. REILLY:  Yes, we've had preliminary settlement
23 negotiations with both parties that have not been successful.

24        THE COURT:  OK.  If you do decide to take up
25 settlement talks again and believe that the Court could be of

1   use to you, you can contact chambers and I can refer you to the
2   assigned magistrate judge -- in this case, it's Magistrate
3   Judge Katharine Parker -- or the court's mediation panel.  But
4   I won't require that you do that at this time unless I hear
5   from you otherwise.
6            In the meantime, unless there's anything else that we
7   need to discuss today --
8            Mr. Reilly.
9            MR. REILLY:  No.  Thank you, your Honor.
10           THE COURT:  Mr. Baughman.
11           MR. BAUGHMAN:  No, your Honor.  Thank you.
12           THE COURT:  Mr. Gottlieb.
13           MR. GOTTLIEB:  No, your Honor.  Thank you for your
14  time today.
15           MR. BAUGHMAN:  My only other question is if the court
16  reporter could give her information so we can order the
17  transcript.
18           THE COURT:  Yes, she can do that as soon as I sign
19  off.
20           In the meantime, the motion schedule will be motions
21  due on May 26, the opposition on July 7 and the reply on August
22  4.
23           With that, I am signing off.  Everyone stay well.
24           (Adjourned)
25