UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff,*<br><br>v.<br><br>GENESIS GLOBAL CAPITAL, LLC and GEMINI TRUST COMPANY, LLC,<br><br>*Defendants.* | No. 23-cv-287 (ER)<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
GEMINI TRUST COMPANY, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

I. Basic Legal Principles Dictate Dismissal of the Complaint .................................................... 2

II. The SEC Has Not Plausibly Alleged the Most Basic Elements of a Sale ............................... 3

    A.    The SEC Does Not Plausibly Allege a Sale of the MDALA ............................... 5

    B.    The SEC Does Not Plausibly Allege a Sale of the Gemini Earn Program .......... 6

CONCLUSION ................................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................2

*BedRoc Ltd. v. United States*,
541 U.S. 176 (2004)................................................................................................................... 2-3

*Cambridge Cap. LLC v. Ruby Has LLC*,
565 F. Supp. 3d 420 (S.D.N.Y. 2021).........................................................................................7

*Chris-Craft Indus. v Bangor Punta Corp.*,
426 F.2d 569 (2d Cir. 1970).......................................................................................................8

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020).......................................................................................................2

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003)......................................................................................................................4

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019)................................................................................................................4

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) .........................................................................................................7

*Glen Arden Commodities, Inc. v. Costantino*,
493 F.2d 1027, 1031 (2d Cir. 1974)....................................................................................... 8-9

*Hocking v. Dubois*,
885 F.2d 1449 (9th Cir. 1989) ...................................................................................................8

*Papasan v. Allain*,
478 U.S. 265 (1986).....................................................................................................................2

*Perrin v. United States*,
444 U.S. 37 (1979)....................................................................................................................3, 4

*SEC v. Blockvest*,
2019 WL 625163 (S.D. Cal. Feb. 14, 2019)...............................................................................9

*SEC v. Ripple Labs, Inc.*,
___ F. Supp. 3d ___, 2023 WL 4507900 (S.D.N.Y. July 13, 2023)..............................................9

*SEC v. Telegram Grp. Inc.*,
 448 F. Supp. 3d 352 (S.D.N.Y. 2020)..................................................................................9

*United States v. Naftalin*,
 441 U.S. 768 (1979).............................................................................................................8

*Wilson v. Dantas*,
 746 F.3d 530 (2d Cir. 2014).................................................................................................2

*Wildes v. BitConnect Int'l PLC*,
 25 F.4th 1341 (11th Cir. 2022) ............................................................................................9

**Statutes**

15 U.S.C. § 77b(a)(3) ...............................................................................................................4

15 U.S.C. § 77e(a) .................................................................................................................3, 7

**Other Authorities**

*Sale*, Black's Law Dictionary (3d ed. 1933)............................................................................4

*Tender*, Black's Law Dictionary (8th ed. 2004) ...................................................................5-6

Defendant Gemini Trust Company, LLC ("Gemini") respectfully submits this reply in support of its motion to dismiss the Complaint filed by Plaintiff Securities and Exchange Commission (the "SEC"). Gemini also joins in the arguments made in the reply brief filed by co-defendant Genesis Global Capital, LLC ("Genesis").

## PRELIMINARY STATEMENT

Section 5 of the Securities Act is not hard to understand. It makes it unlawful to sell (or offer to sell) an unregistered security. These are separate requirements:

(1) There must be a security; ***and***

(2) The defendant must have sold, or offered to sell, "such security."

Thus, to make out its case, the SEC must do two things. *First*, it must identify the unregistered security. *Second,* after it has identified such security, it must identify the sale or the offer to sell.

These are not controversial points. They are clear on the face of the statute, and the SEC has admitted that it must allege both a security and a sale. However, the SEC has not met that burden, and its opposition avoids the question before the court.

Oddly, the SEC's opposition asserts that it has alleged that there are two different securities: (1) the Master Digital Asset Loan Agreement ("MDALA") and (2) the Gemini Earn program itself. This is not what the Complaint actually alleges, and the fact that the SEC cannot decide what is the security at issue only underscores the weakness of its position. It also violates fundamental fairness and the requirement of fair notice.

In any event, even assuming for the sake of argument that SEC has somehow described a security (under either of its inconsistent theories), ***it has not plausibly alleged that such security was ever sold or offered for sale***. The Court does not need to engage in any of the convoluted analyses advanced by the SEC. All it needs do is pose some simple questions:

- When was the alleged security sold?
- Who was the buyer? Who was the seller?
- What price was offered or charged?
- When and how did title transfer to consummate the sale?
- Was there ever a disposition of any interest in the alleged security for value?

The SEC has no answers to these questions, and the Complaint makes no non-conclusory allegations on any of these points. Accordingly, Plaintiff has failed to state a claim.

## ARGUMENT

### I. Basic Legal Principles Dictate Dismissal of the Complaint

Basic rules of civil procedure and standard canons of statutory construction require dismissal for failure to state a claim.

***The Claim Must be Plausible***. It is a fundamental rule of civil procedure that, to state a claim for relief, a complaint's allegations must be "plausible." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

***The Claim Cannot be Based on Conclusory Allegations***. In pleading, "conclusory statements do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020); *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

***The Plain Meaning of the Words in a Statute Controls***. The Court is bound by the plain meaning of the applicable statute—here, the Securities Act. "The preeminent canon of statutory interpretation" is to "presume that the legislature says in a statute what it means and means in a statute what it says." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). Thus, the "inquiry

---

[1] For all citations, internal references and punctuation are removed; all emphasis is added.

2

begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

## II. The SEC Has Not Plausibly Alleged the Most Basic Elements of a Sale

There is no dispute that the Complaint must allege a sale of a security. The creation or issuance of a "security" is different from a "sale," and these separate elements must be pleaded independently. This is evident on the face of the statute. Section 5(a) of the Securities Act provides:

> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
>
> (1)    . . . to sell **such security** . . .

15 U.S.C. § 77e(a). The Complaint itself recognizes this distinction, going so far as to allege that *Genesis* "issued" the relevant securities and then *Gemini* later sold them:

> Sections 5(a) and 5(c) of the Securities Act require that an issuer like Genesis register the offer or sale of securities with the SEC. Similarly, the provisions prohibit Gemini from engaging in the offer and sale of **such unregistered securities**.

Compl. ¶ 20. Reflecting this distinction, in its submission, the SEC acknowledged that it must allege:

> (1) that no registration statement was filed or was in effect as to the securities in question; [and] (2) that the defendant, directly or indirectly, sold or offered to sell **these securities**.

Opp. 23. As these passages reflect, the security must exist independent of the sale. As the Act states, the sale is of "such securities," and the SEC agrees that there must be an offer or sale relating to "those securities."[2]

---

[2] What is or is not a "security" is addressed at length in the briefs filed by Genesis. This question is not at issue on this motion brought by Gemini.

3

Accordingly, the questions presented here are what constitutes a sale and whether a sale has been plausibly alleged. Those questions are answered with a straightforward application of the statute to the facts alleged. The analysis starts, and ends, with the statutory text. In the Securities Act, Congress defined a "sale":

> The term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value.

15 U.S.C. § 77b(a)(3). Thus, there must be a "disposition" of an "interest" in a security "for value." This tracks the accepted legal definition of "sale" in 1933, when the Securities Act was passed:

> A contract whereby property is transferred from one person to another for a consideration of value, implying the passing of the general and absolute title, as distinguished from a special interest falling short of complete ownership.

*Sale*, Black's Law Dictionary (3d ed. 1933).

In short, the "ordinary, contemporary, common meaning," *Perrin*, 444 U.S. at 42, of "sale" requires a transfer of title in exchange for value. That is the applicable definition, and the Court should not expand it to mean something else. "[W]here, as here, the words of the statute are unambiguous, the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). If a "careful examination of the ordinary meaning and structure of the law . . . yields a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

With this foundation in mind, we turn to the SEC's assertions. It claims that there are two securities at issue: the MDALA and the entire Gemini Earn program. With respect to each, we analyze the Complaint for any allegation of a disposition of any interest in "such securities" for value. As will become clear, there is none.

4

### A. The SEC Does Not Plausibly Allege a Sale of the MDALA

This motion must be evaluated on what is *actually* pleaded in the Complaint. Here is what the SEC *actually* alleged:

- "To participate in the Gemini Earn program, Genesis and Gemini required that investors enter into a tri-party Master Digital Asset Loan Agreement with Genesis and Gemini ("Gemini Earn Agreement")." Compl. ¶ 3.

- "The [Gemini] Earn Agreements, as offered and sold through the Gemini Earn program, were securities . . . ." *Id*. ¶ 5.

- "Defendants offered and sold the Gemini Earn Agreements through the Gemini Earn Program without registering the offer and sale with the SEC." *Id*. ¶ 6.

With these allegations, the SEC claims three things: (i) there is something called the Gemini Earn program; (ii) participation in the program required investors to "enter into" a loan agreement referred to as the "Gemini Earn Agreement" (*i.e.*, the MDALA); and (iii) at some later point those loan agreements were "offered and sold." But here is what the Complaint never alleges, and what the SEC does not address in its opposition: how, when, where, and to whom were the MDALAs sold? On what terms? At what point was there any "disposition" of any "interest" in the MDALA for value? The Complaint is silent on each of these points, and that silence is fatal to the SEC's theory.

In its brief, the SEC cites the following paragraphs of the Complaint as supposedly pleading that a sale occurred: 1, 25, 26–29, 30, 33–37, 38–42, 45–48, 49–50, 56–67 (some paragraphs are cited numerous times). Opp. at 23–28. We urge the Court to scrutinize these paragraphs. It will not find within them a non-conclusory, plausible allegation that at any time an MDALA was sold from a seller to a buyer. To be sure, the SEC makes a lot of assertions. For example, it claims that "crypto assets" were "aggregated" and "tender[ed]."[3] Compl. ¶ 26. It asserts that "investors" were

---

[3] The Complaint repeatedly asserts that lenders "tendered" assets to Genesis. Compl. ¶¶ 1, 24, 26, 30, 37, 47, 50, 53, 57. That is a misnomer that appears nowhere in the MDALA and is

5

paid an "interest rate." *Id.* ¶¶ 27–28.  Genesis is said to be obligated to return "invested crypto assets," and "investors" are said to be able to "terminate" their participation. *Id.* ¶ 31.  More generally, it is claimed that "Gemini may terminate the [MDALA]." *Id.* ¶ 32.  All of this may be true, but whatever is being described is not a sale of the MDALA.  There is never any allegation of any disposition of any interest in the MDALA for value.  Not even close.

Ultimately, the SEC's arguments and assertions are fundamentally inconsistent with the concept of a sale.  A child running a lemonade stand knows that when something is sold, ownership of the thing at issue—the lemonade—transfers from the seller to the buyer, in exchange for value.  So too here:  even if MDALAs are securities, the SEC has not made plausible non-conclusory allegations that they were ever sold or offered for sale.

### B. The SEC Does Not Plausibly Allege a Sale of the Gemini Earn Program

The SEC's backup argument makes even less sense.  Unable to allege a sale of the MDALA—the thing it explicitly defined in its Complaint as the security at issue—the SEC now argues that the Gemini Earn program *as a whole* was a security capable of being sold.  Opp. 24.  With all respect, this is frivolous.  Is the SEC seriously contending that the entire Gemini Earn program was a thing that could be bought and sold?  Is it really arguing that someone held title to the program and that it was up for sale?  The assertion, besides being untethered from the facts alleged in the Complaint, bears no relation to reality.

---

meant to recast straightforward asset loans into something different.  "Tender" has a specific meaning:  "A valid and sufficient offer or performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation." *Tender*, Black's Law Dictionary (8th ed. 2004).  None of the assets at issue were "tendered."  They were loaned, on the terms in the MDALA.

6

In its brief, the SEC points to a part of the Complaint titled "The Gemini Earn Program Constituted an Offer and Sale of Securities"[4] and argues that it contains "numerous well-pled allegations" demonstrating that it has met the statutory requirement of pleading a sale.  Opp. 24. Once again, we urge the Court to scrutinize the Complaint—the cited section is paragraphs 44 through 67.

In that section we are told that the Gemini Earn program "involved an investment of money," that there was a "common enterprise," that crypto assets were "pooled" on Genesis's balance sheet, that "investors earned profits" when the "pooled assets" were "deployed," and that investors "reasonably expected to profit."  Compl. ¶¶ 57–61.  All of this could be true, but none of this has anything to do with whether there was an offer to sell the Gemini Earn program or that a sale of the program ever occurred.

Here again, the SEC's brief conflates the requirement to plead the existence of a security with the ***separate requirement*** to plead a sale of "such security."  15 U.S.C. § 77e(a).  Everything the SEC points to in paragraphs 44 through 67 goes to the issue whether the Gemini Earn program is itself a security.  Whatever the merits of those assertions, the SEC never comes close to alleging that title to some "interest" in the Gemini Earn program was transferred "for value."

Rather, the SEC asserts in its brief (without citation) that "Defendants did in fact 'sell,' their promise to pay interest in exchange for billions of dollars' worth of crypto assets."  Opp. 27.  This is close to disingenuous.  First of all, the Complaint makes no such allegation.  Rather, it

---

[4]  Contrary to the SEC's arguments, the cited language—in a section heading—is not an allegation that the Gemini Earn program *was itself* a security.  Rather, the words allege that the program was the mechanism for the sale "of securities."  To the extent the SEC now alleges that the Gemini Earn program itself was a security, the law prohibits such amendment.  "[T]he law is clear that a party may not amend pleadings through a brief."  *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022); *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n.11 (S.D.N.Y. 2021).

alleges that "Defendants have used interstate commerce to offer and sell securities ***through*** Gemini Earn," thereby indicating that Gemini Earn is not itself the security being offered or sold. *See* Compl. ¶ 69. Second, what is being described is an asset loan: interest was paid on the loaned assets, not "in exchange" for them.[5] The borrower did not gain ownership of the assets; it had to give them back upon demand. At some point, words in a statute have to mean what they say. The SEC cites no authority for the proposition that borrowing an asset is a "sale" of a promise to pay interest. None.

The cases on which the SEC relies only underscore the weakness of its position. To begin, the SEC cites *Chris-Craft Indus. v. Bangor Punta Corp.* for the proposition that an "offer" occurs when "it is announced that the securities will be sold at some date in the future." 426 F.2d 569, 574 (2d Cir. 1970). So what? Defendants do not disagree with the point, but it is irrelevant. The Complaint does not allege a sale at any present or future time.

Fundamentally, the SEC's argument fails because, contrary to here, in every case cited there was a sale or an offer to sell the alleged security ***for value***. Opp. 25. In *United States v. Naftalin*, 441 U.S. 768, 772–73 (1979), the Court found that an "offer and sale clearly occurred" where "[r]*espondent placed sell orders with the brokers; the brokers, acting as agents, executed the orders.*" Similarly, the cases the SEC cites for the proposition that "the entirety of the parties' interactions . . . constitutes the securities offering" all involved real sales for value. Opp. 25. In *Hocking v. Dubois*, 885 F.2d 1449, 1453 (9th Cir. 1989), the condominium unit at issue was sold. In *Glen Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1031 (2d Cir. 1974), the court

---

[5]  Notably, interest was paid to the lender in the form of the loaned asset: a loan of bitcoin generated interest paid in bitcoin. *See* Compl. ¶ 27. In other words, no U.S. dollars or other fiat currency changed hands through the MDALA. The SEC has not cited any case in which a court found the "sale" of a security had occurred in a completely cashless transaction of any kind, much less in a cashless asset lending program.

8

considered "the offer and sale of Scotch whisky warehouse receipts." In *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1345 (11th Cir. 2022), the Court held that "a person sells a security when he makes a 'contract of sale' for or *disposes of a security for value*," whether the sale was "individually targeted" or "broadly disseminated." And in *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 367 (S.D.N.Y. 2020), the purchasers "provided upfront capital"—in dollars and euros—"in exchange for the future delivery of a discounted asset."

Finally, *SEC v. Blockvest, LLC* concerned a sale of digital assets through an "initial coin offering . . . where an entity offers participants a unique digital 'coin' or 'token' or 'digital asset' *in exchange for consideration.*" 2019 WL 625163, at *2 (S.D. Cal. Feb. 14, 2019). This is the key distinction that destroys the SEC's position. In this case neither the MDALA nor the Gemini Earn program itself were transferred "in exchange for consideration."

The *Blockvest* decision notes that "*Howey* is an objective inquiry into the character of the instrument or transaction based on what the purchasers were led to expect. *This requires an inquiry into what the purchasers were offered or promised.*" *Id.* at *6. Similarly, in the recent *Ripple* decision, Judge Torres explained that "under *Howey*, the Court analyzes the economic reality and totality of circumstances surrounding the offers and sales of the underlying asset." *SEC v. Ripple Labs, Inc.*, ___ F. Supp. 3d ___, 2023 WL 4507900, at *7 (S.D.N.Y. July 13, 2023). In this case, the Earn users who transferred assets to Genesis were promised neither the MDALA nor the Gemini Earn program in return for their loan. They were promised only the payment of interest on the assets they had loaned. At the risk of repeating ourselves, there simply was no sale—under any reasonable analysis of the "economic reality" of the Gemini Earn program.

Gemini's opening brief examined the terms of the MDALA in detail and demonstrated how they were fundamentally inconsistent with a contract *of sale*. For example, no exchange of

9

consideration is required; the MDALA contains no pricing information; there is no sale mechanism described; the contract is not negotiable and cannot be assigned; and there is no secondary market. Mot. at 8–10. The SEC ignores these facts, and its only response is to cite cases for the unremarkable proposition that an offer to sell may occur when the parties agree to perform sometime in the future.[6] Once again, the SEC is missing the point. An offer to sell must still involve something that would constitute a sale when consummated. There is no such allegation in this case, and so the Complaint fails to state a claim.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: New York, New York
August 18, 2023

JFB LEGAL, PLLC

By /s/ John F. Baughman

John F. Baughman
Andrew Bosse
Elizabeth Lee
299 Broadway – Suite 1816
New York, New York 10007
(212) 548-3212

- and -

SHEARMAN & STERLING LLP

By /s/ John A. Nathanson

John A. Nathanson
599 Lexington Avenue
New York, New York 10022
(212) 848-8611

---

[6] *See* Opp. at 27 (citing *Vacold LLC v. Cerami*, 545 F.3d 114 (2d Cir. 2008); *Yoder v. Orthomolecular Nutrition Inst.*, 751 F.2d 555 (2d Cir. 1985); and *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1972)).

*Attorneys for Gemini Trust Company, LLC*